NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

For the Seventh Circuit

Chicago, Illinois 60604

Argued October 30, 2008
Decided November 12, 2008

## Before

FRANK H. EASTERBROOK, *Chief Judge*

KENNETH F. RIPPLE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 08-1298

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee*,

    *v.*

DYRRELL KEMON MCCOY,
    *Defendant-Appellant*.

Appeal from the United States District Court for the Central District of Illinois.

No. 07-40044
Joe Billy McDade, *Judge*.

**Order**

A jury convicted Dyrrell McCoy of possessing a handgun despite a prior conviction that made it unlawful for him to own firearms. 18 U.S.C. §§ 922(g), 924(a)(2). He was sentenced to 51 months' imprisonment and presents four arguments on appeal.

The lead argument concerns the testimony of Clotea Hudson, McCoy's girlfriend. According to Hudson, McCoy arrived at Hudson's mother's house (where Hudson was living) in the early morning hours of February 9, 2007. Hudson testified that McCoy was in distress, sweating and unresponsive. She called Vernon Lee, with whom McCoy had been drinking, and explained the situation. Next Hudson called McCoy's sister Ti-ara, who discovered (on reaching Hudson's house) that McCoy was not breathing. A call to 911 led to prompt and effective medical help—and to the discovery of a handgun under the couch on which the two women had placed McCoy. Hudson's mother (and her mother's boyfriend) testified that they had never seen the gun before, did not own a gun, and did not allow guns in the house.

Hudson told inconsistent stories about how the gun got under the couch: in one version McCoy removed the gun from his waistband and hid it under the couch, and in another Hudson moved the gun to prevent its detection. Hudson testified at trial that she had put McCoy's gun under the couch. Fearing that Hudson would be impeached on the basis of her inconsistent statements that McCoy himself secreted the gun, the

prosecutor asked Hudson about the other statements and why she had changed her story. Defense counsel objected—for bringing out the nature of the inconsistency also allowed the jury to learn that, in every version of the story, McCoy had been toting a gun. Counsel observed that prior consistent statements may be introduced only to overcome a claim of recent fabrication, see Fed. R. Evid. 801(d)(1), and that if Hudson was lying—if, for example, the gun belonged to her rather than to McCoy—all of her statements post-dated the motive to deceive. But the judge overruled the objection, stating that because the defense planned to bring out the inconsistent portions of Hudson's story it was inevitable that the jury would learn the consistent portions too.

At oral argument McCoy's lawyer conceded that he did plan to impeach Hudson by eliciting that the details of her story varied over time. He contended that it would have been possible to do this while keeping the consistent aspects of Hudson's story from the jury's attention. But we do not see how it is possible to tell the jury that Hudson said different things about *who* removed the gun from McCoy's waistband and put it under the couch, without allowing the jury to learn that in each version the gun started out in McCoy's waistband. The prosecutor would have been entitled to put the statements in context even if the defense tried to make it seem that the weapon had been produced from thin air. So whether or not the district judge erred by allowing the prosecutor to bring out the consistent portions of the story on direct examination, any error was harmless; the jury would have learned the consistent aspects as soon as the defense highlighted the inconsistent portions.

Lee testified about his brief phone conversation with Hudson. According to Lee, Hudson said that McCoy was having an asthma attack, and "I told her to call the ambulance, and then she stated that he had a gun, and I told her to take it from him and call them before he died." Used for the truth of the proposition that McCoy *did* have a gun, the assertion attributed to Hudson is hearsay. Relying on Fed. R. Evid. 803(2), the district court overruled a hearsay objection. The Rule permits testimony "relating to a startling event or condition made while the declarant was under the stress or excitement caused by the event or condition." The judge thought that Hudson was under stress caused by McCoy's difficulty in breathing (and perhaps by the presence of a gun).

McCoy's appellate brief contended that, because McCoy had yet to stop breathing, Hudson could not have been startled and under stress. At oral argument, however, counsel effectively conceded that the district court did not abuse its discretion in thinking that Hudson was under the stress of a startling event. Primary responsibility for deciding how much stress is enough to support this exception to the hearsay rule is committed to the district judge, not the court of appeals.

On cross-examination, McCoy's lawyer asked Lee whether he had been interviewed by a federal agent on August 8, 2007. This question was designed to set up a contention that Lee's description of the phone conversation had varied over time. (According to the agent's report, "HUDSON told LEE she thought MCCOY had a gun on him and did not know what else." This reflects less certainty on Hudson's part than the version of the conversation that Lee related at trial.) On the prosecutor's objection, the district judge told counsel that the Jencks Act, 18 U.S.C. §3500, forecloses reference to the report unless Lee adopted its contents.

McCoy observes on appeal, and correctly, that the Jencks Act does not apply. It delays disclosure of a witness's prior statements to federal agents until the witness has testified, but that condition was met. Yet the district judge's main point, though inartfully phrased, was that counsel needed to establish that Lee really had said what the agent attributed to him. The agent's report was not a verbatim transcript, and it had not been

signed by Lee. So counsel needed to show—either by Lee's admission or the agent's testimony—what Lee actually had said, as opposed to the agent's impression or condensation. At this point defense counsel let the matter drop.

The judge was right to observe that an agent's impression is not necessarily the same as an interviewee's statement. It is evident that this is what the judge meant when referring to the Jencks Act, because decisions implementing that statute distinguish agents' summaries from witness's actual statements; a summary is treated as a "statement" within the scope of the Act only if adopted by the witness. It would have been better for the judge not to mention the Jencks Act when making the point that impeachment was possible only if the report accurately reflected Lee's statement. Invocation of that statute had the potential (perhaps realized) to misdirect attention. Still, an oral give-and-take cannot be conducted with the precision of a written opinion. The fact remains that the foundation for cross-examination was not completed.

McCoy's final argument is that the court should have granted his motion for a new trial. His lawyer says that evidence gathered after trial shows that Hudson was a drug dealer, and he suggests that perhaps Hudson herself possessed the gun in order to protect herself while conducting that business. The district court concluded, however, that the evidence to which McCoy adverts does not imply that Hudson sold drugs. The underlying evidence shows that someone suspected of dealing drugs gave Hudson some cocaine to hide when the police approached. The district judge did not err in concluding that this is some distance from showing that Hudson would have carried a gun to protect her own supply of drugs, so the judge did not abuse his discretion in denying the motion for a new trial.

AFFIRMED